# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 20, 2018

Plaintiff-Appellee,

v

No. 335667
Wayne Circuit Court
LC No. 16-002011-01-FH

DESHAUN JONTAE EMERY,

Defendant-Appellant.

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of possession with intent to deliver 50 or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*). Defendant was sentenced to 6 to 20 years' imprisonment for the conviction. On appeal, he argues that the trial court committed numerous errors and that he received ineffective assistance of counsel. We affirm.

## I. FACTUAL BACKGROUND

Officer Derek Trosper initiated a traffic stop after seeing a vehicle with an obstructed license plate driving above the posted speed limit. Defendant was the driver of the vehicle and his girlfriend, Kalaurie Elhady, was in the front passenger seat. Officer Trosper approached the vehicle, spoke with defendant, and learned that defendant did not have a valid driver's license. Officer Trosper testified that he could smell freshly burnt marijuana coming from inside the vehicle. Other officers arrived on the scene and it was determined that defendant had outstanding warrants. Defendant was arrested for driving without a valid license and was placed in the back of Officer Trosper's patrol car. Elhady was placed in the back of a different patrol car.

An officer conducted a search of the vehicle and, on the front passenger seat, found a red bag containing crack cocaine and heroin. A drug-sniffing dog searched the vehicle and indicated at the driver's side door, the rear driver's side door, and the front passenger door. The dog also alerted to the red bag and an ashtray, which contained "two burnt marijuana cigar ends." The police confiscated defendant's and Elhady's phones. Both phones contained text messages indicative of drug-related activity. Officer Trosper transported defendant to the police station,

-1-

where he was interviewed. After being read his *Miranda*[1] rights, defendant stated that he intended to deliver the crack cocaine in exchange for money and marijuana. He denied any knowledge of the heroin.

Defendant was charged with possession of 50 or more but less than 450 grams of cocaine with intent to deliver, possession of less than 50 grams of heroin with intent to deliver, MCL 333.7401(a)(*iv*), and possession of marijuana, MCL 333.7403(2)(d).[2] At trial, defendant testified that he was unaware that Elhady's bag contained drugs, but that he decided to tell the police that they were his in order to protect Elhady. The jury acquitted defendant of the heroin and marijuana charges, but convicted him on the cocaine charge.

## II. ANALYSIS

### A. MOTIONS TO SUPPRESS

Defendant argues that the trial court erred when, after holding a *Walker*[3] hearing, it denied his initial motion to suppress his confession. We disagree.[4]

"Statements made by a defendant during a custodial interrogation are inadmissible unless the defendant voluntarily, knowingly, and intelligently waived his or her right against self-incrimination." *People v Roberts*, 292 Mich App 492, 505; 808 NW2d 290 (2011). The prosecution has the burden of proving the voluntariness of a defendant's statement by a preponderance of the evidence. *People v Daoud*, 462 Mich 621, 634; 614 NW2d 152 (2000). "Voluntariness is determined by examining the totality of the circumstances surrounding a statement to establish if it was the product of an essentially free and unconstrained decision by its maker." *Roberts*, 292 Mich App at 505. A confession must be made without intimidation, coercion, or deception. *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003). "[P]romises of leniency may be coercive if they are broken or illusory." *United States v Johnson*, 351 F3d 254, 262 (CA 6, 2003).

Defendant argues that his confession was involuntary because the arresting officers told him that unless either he or his girlfriend admitted ownership of the drugs, they would both go to jail. Defendant also testified that the officer who transported him to the station said that the

---

[1] *Miranda v Arizona*, 384 US 435; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] Elhady pleaded guilty to attempted possession with intent to deliver 50 or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*).

[3] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[4] After a suppression hearing, we review the trial court's factual findings for clear error, and we review de novo the court's ultimate decision of whether to suppress the statements to police. *People v Smart*, 304 Mich App 244, 247; 850 NW2d 579 (2014). "A finding is clearly erroneous if it leaves us with a definite and firm conviction that the trial court made a mistake." *People v Manning*, 243 Mich App 615, 620; 624 NW2d 746 (2000).

officer in charge of the case could "work out a deal." Defendant testified that he took this to mean that if he confessed his girlfriend would be released without charges. However, he did not testify to any statements by the transporting officer other than the general statement about "a deal" or any mention by the officer of defendant's girlfriend. Finally, defendant testified that the officer who interviewed him, Officer David Archambeau, told him while walking to the interview room that if he cooperated his girlfriend would be released. Archambeau testified and denied that defendant spoke to him on the condition that Elhady would not be charged. Archambeau recalled telling defendant that if his girlfriend was not involved "then she would be released." The trial court reviewed the video of the interview and found that there was no evidence of any promises being made to defendant. Defendant does not dispute this finding on appeal. Therefore, we cannot conclude that defendant was coerced into testifying because of a broken promise. See *United States v McWhorter*, 515 Fed Appx 511, 518 (CA 6, 2013). Further, Archambeau's statement that Elhady would be released if she was not involved in the crime was not false. In sum, even accepting the facts as presented by defendant, we find no basis to conclude that defendant was promised that if he confessed his girlfriend would be released.

Even if we assume that that the statements made to defendant *before* the interview influenced his decision to confess, under the totality of the circumstances, defendant's decision to confess was the product of free decision-making. The video shows that the interview was a casual, wide-ranging conversation with no indicia of compulsion. Importantly, defendant was read his *Miranda* rights and signed the corresponding form. See *Berkemer v McCarty*, 468 US 420, 433 n 20; 104 S Ct 3138; 82 L Ed 2d 317 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of *Miranda* are rare."). In addition, defendant did not merely take responsibility for the drugs, he also attempted to provide additional information to the officers pertinent to their investigation in order to bargain for a lesser charge for himself. Thus, there is no basis for us to conclude that the confession was the product of a simple quid pro quo, i.e., a confession in exchange for his girlfriend not being charged, as defendant suggests. For those reasons, the trial court correctly concluded that defendant's confession was voluntary.

On the first day of trial, defendant again moved the trial court to suppress his statements. Defendant argues that the trial court erred in not granting his second request. We disagree. First, defendant has abandoned this argument by failing to properly elaborate on it or support it with legal authority. *People v Johnson*, 315 Mich App 163, 199; 889 NW2d 513 (2016). Setting that aside, defense counsel asserted that there was a recording of the arrest containing an officer asking defendant, "who's going to take the fall for this . . . you or your girl." Counsel indicated that this was an "un*Mirandized* statement" that tainted defendant's confession. But it was unclear from counsel's argument whether defendant even responded to the officer's question. Accordingly, the prosecutor argued that there was no evidence that defendant responded to the officer's question. Moreover, given that the drugs were found in the car occupied only by defendant and his girlfriend, the officer's question was directed at the investigation and was not an improper attempt to force a confession. Under those circumstances, the trial court did not err in denying defendant's second motion to suppress.

Defendant also suggests that the trial court erred in not compelling Elhady to be present for the suppression hearing. However, at the *Walker* hearing defendant called Elhady as a

witness, and she asserted her constitutional right against self-incrimination. Therefore, this argument is without merit. Further, defendant fails to identify any legal authority supporting his contention that he should have been able to explore on the record Elhady's reasons for not testifying. We also note that the trial court declined defendant's request for Elhady to be called as a witness at trial in the event that she changed her mind about testifying. But, in a criminal case, a lawyer cannot call a witness who he knows will assert her Fifth Amendment right not to testify. *People v Giacalone*, 399 Mich 642, 645; 250 NW2d 492 (1977). Therefore, the trial court's ruling was not erroneous.

## B. APPOINTMENT OF EXPERT WITNESS

Defendant also argues that the trial court erred in denying his motion for an expert witness to determine the weight of the drugs. "To obtain appointment of an expert, an indigent defendant must demonstrate a nexus between the facts of the case and the need for an expert." *People Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006). In this case, defendant sought an independent expert to weigh the drugs because he had reason to believe that the cocaine weighed less than 50 grams. The prosecutor informed the trial court that preliminary tests showed that there were 144 grams of cocaine recovered from the vehicle.[5] Therefore, the trial court did not abuse its discretion in denying defendant's motion for an independent expert. *Carnicom*, 272 Mich App at 617.

## C. SUFFICIENCY OF THE EVIDENCE

Next, defendant contends that there was insufficient evidence to convict him of possession with intent to deliver 50 or more but less than 450 grams of cocaine. We disagree.

"A court reviewing the sufficiency of the evidence must view the evidence in the light most favorable to the prosecution and determine whether the evidence was sufficient to allow any rational trier of fact to find guilt beyond a reasonable doubt." *People v Kloosterman*, 296 Mich App 636, 639; 823 NW2d 134 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "To convict a defendant of possession with intent to deliver, the prosecution must prove (1) that the recovered substance is a narcotic, (2) the weight of the substance, (3) that the defendant was not authorized to possess the substance, and (4) that the defendant knowingly possessed the substance intending to deliver it." *People v McGhee*, 268 Mich App 600, 612; 709 NW2d 595 (2005).

Defendant argues that, if his confession is excluded, there is insufficient evidence to establish that he possessed the cocaine. But the trial court correctly denied his motions to suppress, and his statements to the police were properly presented as evidence to the jury. His confession plainly provided sufficient evidence to uphold his conviction. And there was circumstantial evidence supporting defendant's conviction. "Circumstantial evidence and the

---

[5] At trial, the evidence was that the cocaine, without the packaging, weighed 130.35 grams.

reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Kosik*, 303 Mich App 146, 151; 841 NW2d 906 (2013). He was driving a vehicle in which a bag containing drugs was found on the passenger seat. A canine search indicated at the driver's door, the rear driver's side door, and the passenger door. We note that possession can be actual or constructive. *McGhee*, 268 Mich App at 622. Further, defendant's phone had text messages of people requesting to purchase "boy and girl," which, according to Officer Archambeau, refers to heroin and cocaine, respectively. Viewing the evidence in a light most favorable to the prosecution, a rational jury could find beyond a reasonable doubt that defendant possessed cocaine with the intention of delivering it.

## D. AMENDMENT OF WITNESS LIST

Defendant argues that he was denied his right to present a defense when the trial court denied his motion to amend his witness list. We disagree.

On the second day of trial, defendant sought to add his sister to the witness list. Defense counsel explained that defendant's sister had recently "friended" Elhady on Facebook and discovered posts made by Elhady which "could be beneficial and helpful to the defense in this matter." The trial court denied the motion, reasoning that admitting Elhady's Facebook posts through defendant's sister would be hearsay. Considering that defendant does not dispute the trial court's ruling that the posts would be hearsay or identify an applicable exception to the rule against hearsay, the trial court did not abuse its discretion in denying his motion to amend. See *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008).

## E. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the effective assistance of counsel when defense counsel opened the door to the introduction of evidence about defendant's outstanding warrants and the role they played in his arrest. Defendant contends that defense counsel's error allowed unduly prejudicial testimony to be heard by the jury, thereby damaging defendant's credibility.[6]

"To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016). "There is a presumption that counsel was effective, and a defendant must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). To show prejudice, "the defendant must show the existence of a reasonable probability

---

[6] Because defendant did not preserve this issue before the trial court, our review is limited to the existing record. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).

that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Before jury selection, defense counsel noted that some of the arrest videos made reference to defendant's outstanding warrants, including a warrant for robbery. The prosecutor agreed with defense counsel that evidence of defendant's warrants was more prejudicial than probative. It was agreed that certain pieces of evidence would be redacted accordingly. During trial, defense counsel asked Officer Trosper if he could tell that it was an African American driving the vehicle when he initiated the stop, and Trosper said that he could not. Defense counsel then began inquiring into the Trosper's decision to arrest defendant for driving with a suspended license. "Couldn't you just have issued him a ticket," counsel asked. Shortly after, outside the presence of the jury, the prosecutor informed the trial court that on redirect examination she would be asking the officer about "the fact that he also arrested [defendant] because of outstanding warrants." The trial court ruled that it would allow the prosecutor "to ask about the warrants without making reference to what the warrant [was] for." When cross-examination resumed, Trosper confirmed that defendant's warrants factored into his decision to arrest him.

Defendant argues that his counsel erred by opening the door to this evidence. From the line of questioning, it appears that defense counsel's strategy was to make it seem as if Trosper pulled defendant over because of his race rather than the traffic violation. Defense counsel also cast doubt on Trosper's decision to detain defendant for driving with a suspended license, perhaps suggesting that the officer was acting out of prejudice. We presume that defense counsel was acting strategically, and we will not review his actions with the benefit of hindsight. *Solloway*, 316 Mich App at 188. Defense counsel "is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). This was a difficult case because defendant confessed to one of the crimes. And "[t]he fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Steward (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996). Even if defense counsel erred, defendant has not established prejudice from that error. Defendant was convicted of the crime he confessed to, and was acquitted of two others. Clearly, the jury was not unduly swayed by the evidence of defendant's warrants.

Affirmed.

/s/ Jonathan Tukel
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro