*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LARRY DONELL STIFF,

        Defendant-Appellant.

UNPUBLISHED
October 15, 2019

No. 340765
Muskegon Circuit Court
LC No. 16-003914-FC

Before: REDFORD, P.J., and JANSEN and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions for two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(d) (actor was aided or abetted by one or more persons and the victim was physically helpless or mentally incapacitated). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 24 to 51 years' imprisonment for each count of CSC-I. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

Defendant's convictions arise from the sexual assaults of KW and SL. According to the evidence at trial, defendant committed these offenses with codefendant Joshua Matthew-Rollin Humphrey. Humphrey met KW on an online dating site, and he arranged to meet her at a bar where defendant was also present. At the bar, KW met SL. Humphrey purchased shots of alcohol for KW, SL, himself, and defendant. After consuming the shots, both KW and SL felt "funny;" they described feeling "dizzy," "woozy," "out of body," "numb," and "fuzzy." Defendant and Humphrey then drove the victims to defendant's home where the sexual assaults occurred in defendant's basement. KW and SL both denied consenting to any sexual activity with defendant or Humphrey. Indeed, they described losing consciousness and coming in and out of consciousness during the sexual assaults. They also described feeling "very heavy and sluggish," like they could not move their bodies.

In the morning, KW and SL were missing clothing and their cell phones. KW reported the incident to police. She also underwent a sexual assault examination and provided a urine sample. Her urine showed the presence of prescription medications that, according to an expert

in forensic toxicology, could be used as rape date drugs, "especially if used together or used together with alcohol." Potential side effects of the medications included sedation and ataxia—i.e., muscle weakness—that would be consistent with the victims' descriptions of feeling like they could not move.

DNA evidence supported the conclusion that defendant and Humphrey had sexual intercourse with KW and SL. At trial, defendant admitted that he had sexual intercourse with both KW and SL. His defense was that he did not know, and had no reason to know, that the victims were physically helpless or mentally incapacitated. Defendant testified that he was unaware they had been drugged by Humphrey, and he claimed that he thought he had consensual sex with the victims. The jury convicted defendant of two courts of CSC-I. This appeal followed.

## II. OTHER-ACTS EVIDENCE

Defendant first challenges the admission of other-acts relating to seven other women who were victims or intended victims of sexual assault by defendant or Humphrey or both. According to defendant, although "minimally" relevant, the other-acts evidence "overshadowed" the events relating to KW and SL, and the minimal probative value of the evidence was substantially outweighed by the danger of unfair prejudice arising from the quantity of other-acts evidence introduced at trial. We disagree.

Defendant opposed the admission of other-acts evidence in the trial court, thereby preserving his claim for our review. See *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review a trial court's admission of other-acts evidence for an abuse of discretion. *People v Kelly*, 317 Mich App 637, 643; 895 NW2d 230 (2016). "A trial court's decision is an abuse of discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013).

MRE 404(b)(1) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

For other-acts evidence to be admissible under MRE 404(b)(1), the proponent of the evidence must show: "(1) that the other acts evidence is for a proper purpose (other than to show character and action in conformity therewith), (2) that the evidence is relevant to an issue of fact that is of consequence at trial, and (3) that, under MRE 403, the danger of unfair prejudice does not substantially outweigh the probative value of the evidence." *People v Steele*, 283 Mich App 472,

479; 769 NW2d 256 (2009). Upon request, the trial court may provide a limiting instruction on the use of other-acts evidence. *Kelly*, 317 Mich App at 644.

In this case, with regards to proper purpose, the trial court admitted the other-acts evidence to show one or more of the following purposes: (1) intent or motive, (2) that defendant acted purposefully rather than by mistake, or (3) that defendant used a common plan or scheme, and that he knew the victims were mentally incapacitated or physically helpless. On appeal, defendant appears to concede that the other-acts evidence was somewhat relevant to a proper purpose. However, contrary to defendant's arguments, the other-acts evidence was far more than "minimally" relevant. Relevance consists of two components: materiality and probative value. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). "The relationship of the elements of the charge, the theories of admissibility, and the defenses asserted governs what is relevant and material." *People v VanderVliet*, 444 Mich 52, 75; 508 NW2d 114 (1993), amended by 445 Mich 1205 (1994).

In this case, defendant's general denial of guilt placed all elements of the CSC charges at issue. See *People v Starr*, 457 Mich 490, 501; 577 NW2d 673 (1998). And, in particular, the central issue at trial was whether defendant knew, or had reason to know, that KW and SL were mentally incapacitated or physically helpless when he sexually assaulted them. See MCL 750.520b(1)(d)(*i*). Indeed, defendant admitted that he had sex with both women, and his theory of the case was that he was unaware they had been drugged by Humphrey. In this context, other-acts evidence demonstrating defendant's pattern of working with Humphrey to meet women online, drug them, and sexually assault or rob them or both was highly relevant to a material fact of consequence, namely—whether defendant was a knowing participant in Humphrey's plan to drug, rape, and rob KW or SL, or whether he was an unwitting accomplice who did not know, and had no reason to know, that the victims were mentally incapacitated or physically helpless. Cf. *People v Jackson*, 498 Mich 246, 276-277; 869 NW2d 253 (2015) (concluding other-acts evidence was relevant for proper, nonpropensity purpose of countering the defendant's theory of the case); *Starr*, 457 Mich at 501-502 (concluding other-acts evidence was admissible to rebut a defendant's claim).

Specifically, the evidence showed that Humphrey met five women online, and he arranged to meet these women in bars where defendant was also present. While with defendant and Humphrey, the women were drugged—and like KW and SL—they described feeling sedated, unable to move, and losing consciousness. Many of the women also had items stolen. With the exception of one of the women, who escaped through the aid of friends, the women were sexually assaulted. Defendant admitted to participating in sexual activity with one of the women, and notably, defendant admitted that he had sex with her after he had reason to believe that Humphrey was drugging women. In comparison, the evidence did not establish that defendant actually participated in the other sexual assaults. Regardless, the evidence did establish that defendant assisted Humphrey to the extent that many of the women described being brought to defendant's basement, and defendant helped steal items from one of the women's apartments. Overall, the events relating to these five women, were relevant to a proper purpose—namely, to establish defendant's and Humphrey's common scheme or plan to meet women online and to then drug, rape, and rob them; and defendant's past participation in such a scheme was relevant to determining whether his assaults of KW and SL were additional manifestations of that plan. See *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d

888 (2000) ("[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system."). Given the number of times in which defendant was involved in the rape or robbery of drugged women, under the doctrine of chances, defendant's past involvement in Humphrey's plans to drug, rape, and rob women is also probative of defendant's intent and the absence of mistake. See *People v Mardlin*, 487 Mich 609, 617, 625; 790 NW2d 607 (2010); *Crawford*, 458 Mich at 393. That is, as the number of drug-related sexual assaults and robberies in which defendant participated increased, the objective probability that defendant was unaware of the use of drugs decreased, particularly when all the women described the debilitating effects of the drugs and when there were witnesses to the other acts to confirm that the victims were *not* behaving normally. See *Mardlin*, 487 Mich at 616-617. Simply stated, it seems extraordinarily improbable that defendant could unwittingly rape or rob a total of seven women. Cf. *Kelly*, 317 Mich App at 646-647 & n 4. On the whole, the trial court did not abuse its discretion by determining that other-acts evidence relating to the five women was relevant and offered for a proper, nonpropensity purpose.

In comparison to the other victims, SB and a victim identified only by first name (whom we shall refer to as "E") are factually the most distinct in that Humphrey was not involved in either incident and E was not drugged. However, these differences do not compel the conclusion that the trial court abused its discretion by admitting other-acts evidence relating to SB and E.

To the contrary, the evidence regarding SB is perhaps among the most compelling of the other-acts evidence because it shows that defendant attempted to execute the common plan without Humphrey, undermining defendant's claim that he was Humphrey's unwitting accomplice. Specifically, SB's testimony showed that defendant met her online, arranged to meet her in person, took her to his basement, and he then drugged her drink. Like KW, SL, and the other women, SB described feeling weak, dizzy, and paralyzed. Although SB managed to escape by calling her ex-husband for help, defendant's actions nevertheless demonstrate his attempt to implement the scheme he engaged in with Humphrey—namely, meeting women online and drugging them. Though not identical to the other cases, defendant's actions toward SB share a concurrence of common features that is logically seen as part of the same general plan, scheme, or design, and it supports the inference that defendant employed this common plan in committing the offenses involving KW and SL. See *Steele*, 283 Mich App at 479. Accordingly, the events relating to SB were relevant.

Regarding E, the admission of evidence regarding defendant's sexual assault of E poses the closest question. The events relating to E, which occurred in 2000 when defendant was 14 years old, are the most remote in time, which can limit the logical relevance of this other-acts evidence. See *People v Yost*, 278 Mich App 341, 405; 749 NW2d 753 (2008). In terms of defendant's conduct, the evidence showed that defendant broke into E's home while armed with a knife and sexually assaulted her while she slept. By far the most distinct and the most remote of the other-acts evidence, the events relating to E—showing defendant's sexual assault of a

physically helpless[1] victim—were nevertheless relevant to disproving defendant's claim that he acted as Humphrey's unwitting accomplice and engaged in sex with KW and SL while unaware they were physically helpless or mentally incapacitated. In other words, when considered with the other bad-acts evidence in this case, defendant's conduct shows a general scheme to sexually assault physically incapacitated women. Although the events relating to E do not share all the distinct features of defendant's later conduct in concert with Humphrey, "distinctive and unusual features are not required to establish the existence of a common design or plan. The evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense." *Hine*, 467 Mich at 252-253. As with the evidence relating to SB, the fact that defendant undertook the sexual assault of a sleeping E—without Humphrey—is probative of whether he acted as Humphrey's unwitting accomplice or whether he sexually assaulted KW and SL as part of a scheme to sexually assault physically helpless or mentally incapacitated women. See MCL 750.520b(1)(d)(*i*); see also *Crawford*, 458 Mich at 393 ("[T]he more often the defendant commits an actus reus, the less is the likelihood that the defendant acted accidentally or innocently.") (quotation marks and citation omitted). Overall, in light of defendant's proffered defense, the evidence relating to E was relevant to disprove defendant's claim that he was Humphrey's unwitting accomplice, and therefore, it was relevant to a proper, nonpropensity purpose. See *Jackson*, 498 Mich at 276-277; *Starr*, 457 Mich at 501-502.

The trial court also did not abuse its discretion by concluding that MRE 403 did not warrant exclusion of the other-acts evidence. Other-acts evidence otherwise admissible under MRE 404(b) may nevertheless be excluded under MRE 403 " 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *Sabin (After Remand)*, 463 Mich at 58, quoting MRE 403. "All relevant evidence is prejudicial; it is only unfairly prejudicial evidence that should be excluded." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005).

> Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury. This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. [*Id.* at 614 (quotation marks and citations omitted).]

Whether evidence is more prejudicial than probative under MRE 403 is best left to a contemporaneous assessment by the trial court. *Id.*

In this case, although the other-acts evidence was prejudicial to defendant, it was not unfairly so, and any prejudice did not outweigh the probative value of the other-acts evidence.

---

[1] For purposes of the CSC statutes, the term "physically helpless" includes someone who is asleep. See MCL 750.520a(m).

As discussed, contrary to defendant's characterization of the other-acts evidence as "minimally" relevant, the evidence had significant probative value regarding whether defendant acted as Humphrey's unwitting accomplice or whether he undertook the sexual assaults on KW and SL as a part of a common scheme to sexually assault physically helpless and mentally incapacitated women. Defendant nevertheless asserts that this other-acts evidence "overshadowed" the charged conduct in the current case, but the charges in the current case involve the egregious sexual assault of two drugged women, and there is nothing in the nature of the other-acts evidence—involving similar conduct—that would overshadow the abhorrent characteristics of the charges of which defendant stood accused in this case. Cf. *Starr*, 457 Mich at 499-500 ("The danger the rule seeks to avoid is that of unfair prejudice, not prejudice that stems only from the abhorrent nature of the crime itself."). Although defendant complains of the sheer volume of other-acts evidence, under the doctrine of chances, given defendant's claimed defense in this case, the number of other-acts victims and the frequency of defendant's conduct in concert with Humphrey was in fact relevant to a determination of the likelihood that defendant knew that the women had been drugged and that he did not innocently or mistakenly assault them. See *Mardlin*, 487 Mich at 616-617, 625; *Kelly*, 317 Mich App at 646-647 & n 4; see also *Bourjaily v United States*, 483 US 171, 179-180; 107 S Ct 2775; 97 L Ed 2d 144 (1987) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts."). Overall, defendant has not shown that the amount of other-acts evidence was unfairly prejudicial or cumulative, particularly when the trial court restricted the prosecutor in the number of other-acts witnesses that could be called and when the trial court gave the jury instruction a limiting instruction on the proper use of other-acts evidence. See *People v Orr*, 275 Mich App 587, 593; 739 NW2d 385 (2007).

Bearing in mind that MRE 403 determinations are best left to the trial court and that decisions on close evidentiary questions do not ordinarily constitute an abuse of discretion, the trial court did not abuse its discretion by admitting the other-acts evidence in question under MRE 404(b).[2] See *Sabin (After Remand)*, 463 Mich at 67, 71.

---

[2] As noted, the evidence relating to E poses the closest question, and the admission of this evidence is the only other-acts evidence that gives us pause. But, even assuming some error in admitting the evidence relating to E, defendant would not be entitled to relief because, after an examination of the entire cause, it does not affirmatively appear more probable than not that the error was outcome-determinative. See *Burns*, 494 Mich at 110. Contrary to defendant's arguments, the current case is not a pure credibility contest between defendant and the victims. Expert testimony on the effects of the drugs corroborated the victims' descriptions of their behavior. Further, the other-acts evidence from six other victims, including a woman drugged by defendant, established defendant's common scheme, in concert with Humphrey, to meet women online, drug them, sexually assault them, and rob them. This other-acts evidence provided strong support for the conclusion that defendant was a knowing participant in Humphrey's schemes. Indeed, by his own admission, defendant continued to spend time with Humphrey and to participate in Humphrey's scheme—by, for example, having sex with one of the women—even

## III. PROSECUTORIAL MISCONDUCT

Next, defendant argues that the prosecutor engaged in misconduct by arguing facts not in evidence and denigrating defendant and defense counsel. We disagree, and conclude these arguments are without merit.

Defendant's claims of prosecutorial misconduct are unpreserved and, therefore, reviewed for plain error affecting defendant's substantial rights. See *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). "To avoid forfeiture of review of this issue under the plain error rule, the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights." *Id*. Reversal is not warranted when "a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). The propriety of a prosecutor's remarks depends on the facts of each case, meaning that a prosecutor's comments must be evaluated as a whole and in context in light of the defense arguments and the evidence admitted at trial. *Callon*, 256 Mich App at 330. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

In this case, defendant first argues that the prosecutor argued facts not in evidence during closing arguments. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (citations omitted). Defendant asserts that there is no support for the prosecutor's statements that "defendant said that [Humphrey] bought drinks and drugged and raped these women," that "defendant told you they were drugged," and that "defendant has told you they were mentally incapacitated or physically helpless." Notably, the prosecutor did *not* assert that defendant admitted he knew the women were drugged *at the time of the sexual assaults*. To the contrary, the prosecutor acknowledged during closing that defendant testified that he "just didn't know" that the women had been "drugged" and "raped."

Considering the prosecutor's comments as a whole and in context, the prosecutor's basic assertion was that defendant agreed *at trial* that *Humphrey* had drugged the women and raped

---

*after* defendant had reason to know that Humphrey was drugging women. Overall, the evidence overwhelmingly supported the conclusion that defendant sexually assaulted KW and SL when he knew or had reason to know that they were mentally incapacitated or physically helpless. See MCL 750.520b(1)(d)(*i*). Accordingly, defendant cannot show outcome-determinative error relating to the admission of E's evidence, and even assuming error, he would not be entitled to relief on appeal. See *id*.

them while they were mentally incapacitated or physically helpless. Although defendant claims that the prosecutor's statements were factually unsupported, during his trial testimony, defendant readily admitted that Humphrey bought drinks for the women, defendant testified about Humphrey's "medical" background, defendant admitted that he was "willfully blind" to Humphrey's drugging of women, and defendant acknowledged that he believed that the women were drugged by Humphrey while they were at the bar. Indeed, the defense theory of the case, as set forth during opening statements, was that KW and SL were raped and that Humphrey was the rapist—a "sexual predator" and a "sociopathic monster," who met women through the internet, drugged them, and raped them. In this context, the prosecutor did not engage in misconduct or argue facts not in evidence by asserting that defendant acknowledged that *Humphrey* drugged and raped the victims. Defendant has not shown plain error.

Second, defendant argues that the prosecutor engaged in misconduct during rebuttal by asserting that defense counsel's arguments were "red herrings," "great showmanship," and "defense attorney 101," and by setting forth a time line to underscore the prosecutor's "red herring" characterization. Viewed in isolation, these types of "red herring" remarks may appear as an improper attack on defense counsel's veracity or a suggestion that defense counsel was trying to mislead the jury. See *Unger*, 278 Mich App at 236, 238. However, the prosecutor's remarks must be considered in light of defense counsel's comments, and "[a]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*, 245 Mich App 572, 593; 629 NW2d 411 (2001).

When considered in light of defense counsel's arguments and comments, the prosecutor's statements during rebuttal were a fair response to defense counsel's remarks. Specifically, in attempting to explain why defendant had been susceptible to Humphrey's machinations, defense counsel's closing argument included a lengthy discussion of defendant's family history and his childhood, including remarks about how defendant was raised without a father and how defendant was "taken away" from his family at age 14. In response, the prosecutor simply asserted that defendant's family history was irrelevant and that the jury should not allow sympathy for defendant to affect their verdict. Later, the prosecutor urged the jury to evaluate defense counsel's arguments regarding defendant's relationship with Humphrey in light of the "time line" of events. On the whole, as part of the prosecutor's response to defense counsel's argument about defendant's childhood and his relationship with Humphrey, the prosecutor's references to a "red herring" and similar characterizations of defense counsel's arguments did not deprive defendant of a fair trial. See *Dobek*, 274 Mich App at 67 (concluding "red herring" remark during rebuttal as response to defense counsel's argument did not warrant reversal); *Watson*, 245 Mich App at 592-593 (same). Defendant has not shown plain error.

Third, defendant argues that the prosecutor engaged in misconduct during rebuttal by (1) arguing that text messages discussed at trial were proof defendant knew the drinks were drugged and (2) stating that defendant "raped [SS] afterwards." There is no merit to this argument. The evidence presented at trial included evidence of text messages between defendant and Humphrey in which they discussed their plans to meet women and get them to drink, and the evidence indicated that defendant continued to spend time with Humphrey—and that, by his own admission, he had sex with SS—after defendant had reason to believe that Humphrey was drugging women. Considering the evidence presented at trial, these arguments were well within

-8-

the prosecutor's "great latitude" to argue the evidence and all reasonable inferences as it related to his theory of the case.  See *Unger*, 278 Mich App at 236.  Defendant has not shown error.

Finally, defendant argues that the prosecutor engaged in misconduct during rebuttal by denigrating defendant insofar as the prosecutor (1) emphasized that defendant prepared for trial by reading transcripts from Humphrey's trial and (2) characterized defendant as a "professional witness" because he looked at the jury when answering questions.  A prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remark." *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995).  But "[a] prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996).  Considered in context, the prosecutor challenged defendant's credibility, but the prosecutor did not denigrate defendant with intemperate and prejudicial remarks.  See *Bahoda*, 448 Mich at 283, 288.  For example, defendant acknowledged in his testimony that he prepared for trial by reading transcripts of the women's testimony from a previous trial, and the prosecutor used this fact—and other evidence—to argue that defendant conformed his version of events to match the evidence.[3]  Overall, in context, the prosecutor's reference to the fact that defendant read the transcripts of the women's testimony was a comment on defendant's credibility.  This was not error.  See *Launsburry*, 217 Mich App at 361.

With regard to the "professional witness" comment, in context, this remark was actually part of a larger argument by the prosecutor to the effect that defendant was "not dumb."  The prosecutor made this argument in response to defense counsel's characterization of defendant as a "wing man" who was unwittingly used by Humphrey; indeed, defense counsel compared Humphrey to a "magician" and characterized him as a "villain" who used others, including defendant, like "pawns."  In response to these remarks, the prosecutor argued that defendant showed intelligence by testifying like "a professional witness;" that is, like the experts and police officers, defendant addressed the jury and attempted to engage the jury because "he's not dumb" and "he['s] not stupid."  In context, the prosecutor did not disparage defendant for testifying like a "professional witness."  Instead, the prosecutor indicated that defendant's manner of testifying was "very smart" and a clear indication that defendant was "not stupid."  As a response to defense counsel's assertion that Humphrey was a villain using defendant like a pawn, the prosecutor did not denigrate defendant by arguing that defendant was also an intelligent man.  See *Bahoda*, 448 Mich at 283, 288; *Watson*, 245 Mich App at 593.

On the whole, defendant has not shown that the prosecutor engaged in misconduct.  Moreover, even if some of the prosecutor's remarks were unwise or intemperate, the remarks were not such as would be likely to "deflect the jury's attention from the evidence presented in this case." *Unger*, 278 Mich App at 237.  Any prejudice could have been cured with a timely

---

[3] For example, defendant claimed that almost none of the women exhibited any signs of being drugged or more than "tipsy."  The only exception defendant acknowledged was JW, who defendant described as "drunk" and "messed up."  In light of this evidence, during rebuttal, the prosecutor argued that defendant admitted that JW was drunk because defendant knew that she had witnesses to corroborate her version of events.

jury instruction. See *id*. at 235. Indeed, the trial court instructed the jury that it was the jury's "job and nobody else's" to decide the facts of the case and that, in reaching a verdict, the jury must decide the case "based only on the evidence" without letting "sympathy or prejudice influence [its] decision." Further, the trial court instructed the jury that the "lawyers' statements and arguments are not evidence." Jurors are presumed to follow their instructions, and these instructions alleviated any prejudice to defendant resulting from the prosecutor's comments. See *id*.; *People v Ullah*, 216 Mich App 669, 683; 550 NW2d 568 (1996).[4]

## IV. JURY SELECTION

Next, defendant argues that defense counsel provided ineffective assistance during voir dire by failing to strike two jurors either for cause or through the use of peremptory challenges.

"To establish ineffective assistance of counsel, defendant must show (1) that defense counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's errors, a different outcome would have resulted." *People v Jackson*, 292 Mich App 583, 600-601; 808 NW2d 541 (2011). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "An attorney's decisions relating to the selection of jurors generally involve matters of trial strategy," which this Court will not evaluate with the benefit of hindsight. *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001) (opinion by O'CONNELL, J.).

In this case, defendant argues that counsel provided ineffective assistance by failing to remove two jurors or, at a minimum, to make further inquiry regarding their potential biases. The first juror in question stated that he had read about the case and was aware of the details of the crimes. However, in response to defense counsel's questioning, this juror also stated that he could nevertheless be "fair and impartial." Elsewhere, the juror said that he could "fulfill [his] duty as a juror" and that he had "no problem following the cookbook," meaning "the law." On this record, defendant has not overcome the presumption that defense counsel's failure to

---

[4] Defendant also asserts that defense counsel provided ineffective assistance by failing to object to the prosecutor's remarks. However, because the prosecutor did not engage in misconduct, defense counsel cannot be considered ineffective for failing to object. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010); *Ullah*, 216 Mich App at 685. Moreover, even assuming some impropriety in the prosecutor's remarks, whether to object is a matter of strategy, and declining to object to avoid drawing attention to an improper comment is consistent with sound trial strategy. See *Bahoda*, 448 Mich at 287 n 54. On the record presented, defendant has not shown that defense counsel's failure to object was anything other than a matter of trial strategy. See *Unger*, 278 Mich App at 242-243. And defendant has not shown that defense counsel's failure to object affected the outcome of the proceedings, particularly when the trial court's instructions alleviated any potential prejudice caused by the prosecutor's comments. See *id*. at 243. Defendant is not entitled to relief on this basis.

challenge the juror was a matter of sound trial strategy, particularly when defense counsel had the opportunity to observe the juror during voir dire and when the juror maintained that he could be fair and impartial. Cf. *Unger*, 278 Mich App at 257-258. See also *Johnson*, 245 Mich App at 259. Accordingly, defendant has not shown that he was denied the effective assistance of counsel, and he is not entitled to relief on this basis.

The second potential juror in question stated that her younger brother was the victim in an ongoing sexual assault case, and she indicated that the situation with her brother could "impact" her ability to serve on the jury. Notably, contrary to defendant's assertions that this woman served on defendant's jury, this prospective juror was dismissed for cause by stipulation of the parties, and she did *not* serve on the jury. Accordingly, defendant has not established the factual predicate of his ineffective assistance claim, see *Carbin*, 463 Mich at 600, and he has not shown that defense counsel was ineffective.

On the whole, jury selection is generally a matter of trial strategy, *Johnson*, 245 Mich App at 259, and defendant has not shown that counsel provided ineffective assistance in selecting what counsel surely believed was a "reasonable, fair, and honest jury," *Unger*, 278 Mich App at 258. Accordingly, defendant's claim of ineffective assistance is without merit.

## V. MRE 410(4)

Defendant next asserts that the trial court erred by allowing a police officer to testify about defendant's statements because, according to defendant, the statements were made in the course of plea discussions and his statements were, therefore, inadmissible under MRE 410(4).

"This Court reviews preserved evidentiary issues for an abuse of discretion." *People v Orr*, 275 Mich App 587, 588; 739 NW2d 385 (2007). "A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *Id*. at 588-589. To the extent the trial court's evidentiary decision required findings of fact preliminary to the admission of evidence, see MRE 104(a); *Burns*, 494 Mich at 117 n 39, the trial court's factual findings are reviewed for clear error, see *People v Smart*, 304 Mich App 244, 254; 850 NW2d 579 (2014). "Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *Burns*, 494 Mich at 110.

MRE 410 states:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> * * *
>
> (4) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

"The principle underlying MRE 410 is that plea negotiations should be encouraged and that, for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without

-11-

fearing that his statements may later be used against him at trial." *People v Manges*, 134 Mich App 49, 59; 350 NW2d 829 (1984).

To be subject to MRE 401(4), a defendant's statement must be "made in the course of plea discussions with an attorney for the prosecuting authority." See *Smart*, 304 Mich App at 250. However, "MRE 410(4) does not require that a statement made during plea discussions be made in the presence of an attorney for the prosecuting authority. It only requires that the defendant's statement be made 'in the course of plea discussions' with the prosecuting attorney." *People v Smart*, 497 Mich 950 (2015). Whether a statement was made in the course of plea discussions for purposes of MRE 410(4) involves application of a two-pronged test adopted in *People v Dunn*, 446 Mich 409, 415; 521 NW2d 255 (1994). In particular, "[i]n *Dunn,* our Supreme Court held that MRE 410 applies when (1) the defendant has an actual subjective expectation to negotiate a plea at the time of the discussion, and (2) that expectation is reasonable given the totality of the objective circumstances." *Smart*, 304 Mich App at 249 (quotation marks and citation omitted).

In this case, defendant initiated contact with police in April 2016 by sending a "kite" from jail to police indicating that he had "valuable info." When police met with defendant, he told them that he had "important information that he thought [the police] should know about, um, regarding the type of drugs that were used, um, and possibly some more victims' names." Police did not attempt to offer defendant any type of deal, and when the conversation between defendant and police occurred, the prosecution had made no offers to defendant nor had defendant requested an offer of any kind. Indeed, in response to questions by the trial court, defense counsel expressly conceded that the police did not offer defendant a guilty plea and that the possibility of a plea was *never* discussed. On these facts, the trial court concluded that plea discussions were not ongoing and that defendant's statement to police was, therefore, not made in the course of plea discussions with an attorney for the prosecuting authority. Accordingly, the trial court found MRE 410(4) inapplicable.

Given defense counsel's concession that the possibility of a plea was never discussed, the trial court's factual findings were not clearly erroneous, and the trial court did not err by concluding that MRE 410(4) was inapplicable. See *People v Hicks*, 185 Mich App 107, 114; 460 NW2d 569 (1990) ("Our review of the record indicates that MRE 410 is inapplicable in the instant case *because the possibility of a guilty plea was never discussed nor was one offered or accepted*.") (emphasis added). At most, defendant may have hoped that his offer to cooperate would lead to favorable results, but the fact remains that defendant initiated contact with police without mentioning the possibility of a deal in his kite, and he then voluntarily incriminated himself without any statement from the authorities to suggest that they were amenable to negotiating with him. See *Smart*, 304 Mich App at 253 ("[S]imply because a defendant seeks to engage in a plea negotiation does not mean that the person to whom he is speaking (a prosecuting attorney or another person) would or must view any discussion with the defendant as a plea negotiation."); see also *United States v Levy*, 578 F2d 896, 901-902 (CA 2, 1978); *United*

*States v Brooks*, 670 F2d 625, 628 (CA 5, 1982).[5]  Overall, when the possibility of a plea was never discussed, any expectation by defendant to negotiate a plea cannot be considered reasonable given the totality of the circumstances, and therefore, it cannot be concluded that defendant's statements were made in the course of plea discussions with the prosecuting authority.  See *Dunn*, 446 Mich at 415; *Smart*, 304 Mich App at 249.  Accordingly, MRE 410(4) did not apply, and the trial court did not abuse its discretion by admitting defendant's statement.

Even assuming the trial court erred by admitting the statement, defendant would not be entitled to relief on appeal because, after an examination of the entire cause, it does not affirmatively appear more probable than not that the error was outcome-determinative.  See *Burns*, 494 Mich at 110.  A police officer testified that defendant said that he had "important information that he thought we should know about, um, regarding the type of drugs that were used, um, and possibly some more victims' names."  However, the officer did not testify that defendant actually gave police any information about the types of drugs or any additional victim names.  The prejudicial effect of this somewhat vague statement is relatively minimal when considered in light of the other overwhelming evidence of defendant's guilt.  Defendant is not entitled to relief on appeal.[6]

## VI. TEXT MESSAGES

Defendant also argues that the trial court abused its discretion by allowing the prosecutor to cross-examine defendant about text messages between defendant and Humphrey.  The messages, which were sent in 2016, do not specifically relate to KW and SL, and defendant argues that the messages were irrelevant.  Defendant also argues that the text messages amount to other-acts evidence and that the questions should not have been allowed because the prosecutor failed to provide notice under MRE 404(b)(2).  These arguments are without merit.

"Generally, all relevant evidence is admissible at trial, and [e]vidence which is not relevant is not admissible." *People v Bergman*, 312 Mich App 471, 483; 879 NW2d 278 (2015) (quotation marks and citation omitted).  " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  MRE 401. "Evidence bearing on a witness's credibility is always relevant." *In re Dearmon*, 303 Mich App

---

[5] "Lower federal court decisions are not binding on this Court, but may be considered on the basis of their persuasive analysis." *People v Fomby*, 300 Mich App 46, 50 n 1; 831 NW2d 887 (2013).

[6] On appeal, defendant notes that the officer's testimony made clear that defendant was in jail. Defendant does not develop an argument regarding the significance of this fact.  Regardless, we note that *defense counsel* expressly stated at trial that it was his intention to cross-examine the police officer about the location where the interview took place.  Given defense counsel's statements at trial, defendant cannot now claim error on appeal.  See *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998).

684, 696; 847 NW2d 514 (2014). See also MRE 607 ("The credibility of a witness may be attacked by any party . . . .").

In this case, the prosecutor used the text messages from 2016 to impeach defendant during cross-examination. Considering the text messages in light of defendant's claims that he never encouraged the women to drink or discussed women drinking with Humphrey, the trial court did not abuse its discretion by allowing cross-examination on the text messages in order to impeach defendant's credibility.[7] Defendant's credibility was relevant, and cross-examination related to impeaching defendant's credibility with prior statements inconsistent with his trial testimony was generally permissible. See *People v Clary*, 494 Mich 260, 278; 833 NW2d 308 (2013). Accordingly, the trial court did not abuse its discretion by overruling defendant's relevancy objection, and allowing use of the text messages for impeachment purposes.

In contrast, on appeal, defendant asserts that, if the text messages were relevant, the text messages constituted other-acts evidence within the meaning of MRE 404(b) and that questions about the text messages were improper because the prosecutor failed to provide notice required by MRE 404(b)(2). Defendant's MRE 404(b)(2) argument is unpreserved, and defendant has not shown plain error. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). As noted by the prosecutor, the text messages were statements—rather than other-acts—and "a prior statement does not constitute a prior bad act coming under MRE 404(b) because it is just that, a prior statement and not a prior bad act." *People v Rushlow*, 179 Mich App 172, 176; 445 NW2d 222 (1989), aff'd 437 Mich 149 (1991). See also *People v Goddard*, 429 Mich 505, 514-515; 418 NW2d 881 (1988). Accordingly, notice under MRE 404(b)(2) was not required to use these statements for impeachment purposes during cross-examination. Moreover, even if the prosecutor's questions are construed as questions about defendant's conduct, cross-examination about specific instances of conduct for impeachment purposes is permissible under MRE 608(b). See *People v Messenger*, 221 Mich App 171, 180; 561 NW2d 463 (1997). And, in contrast to MRE 404(b), "Rule 608(b) does not require advance notice of the prosecutor's intent to use specific instances of defendant's conduct to impeach the defendant when he testifies." *United*

---

[7] For example, in contrast to his claim that Humphrey always initiated their outings, defendant admitted that there was a text in which he asked Humphrey if he was "doin' anything tonight" and another message in which they discussed plans to attend a party. In contrast to his claim that he never tried to get women to drink or to buy drinks, defendant also acknowledged a message in which he agreed to convince a girl to buy drinks by pretending it was his birthday. Contrary to his claims that he and Humphrey never discussed getting women to drink, there was a message in which Humphrey told defendant to get $20 and Humphrey said that he would try to have a woman drink before defendant was "ready." In another text, defendant asked Humphrey whether "she drinking yet?" In another chain of texts about what bar to go to, defendant also asked whether a woman had been drinking at Humphrey's house, and Humphrey texted defendant about his plans to buy the woman a rum and Coke. In contrast to defendant's testimony that Humphrey never mentioned drugging women, defendant also acknowledged a message in which Humphrey stated that police charged him with larceny because "they couldn't (inaudible) shot about me drugging women."

*States v Tomblin*, 46 F3d 1369, 1388 n 51 (CA 5, 1995). Defendant offers no authority for the proposition that pretrial notice was required to use the text messages for impeachment, and accordingly, defendant has not shown plain error.[8] See *Coy*, 258 Mich App at 12.

## VII. STANDARD 4 BRIEF

In a Standard 4 brief, defendant raises several additional arguments, asserting that he is entitled to reversal of his convictions because a search warrant for his home was invalid, defense counsel provided ineffective assistance, and the trial court abused its discretion by allowing a witness—Christine Burnham—to read her report relating to the events involving E. These arguments are without merit.

## A. SEARCH WARRANT

Defendant first makes the unpreserved claim that the police obtained a search warrant for his home on the basis of fabricated evidence insofar as they averred that they had reason to search for the date rape drug GHB, but KW and SS tested negative for GHB. "Generally, in order for a search executed pursuant to a warrant to be valid, the warrant must be based on probable cause." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). When a defendant alleges that a warrant was obtained on the basis of false information, "defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause." *People v Ulman*, 244 Mich App 500, 510; 625 NW2d 429 (2001).

In this case, because defendant never raised this issue in the trial court, the search warrant and supporting affidavit do not appear in the lower court file that forms the basis for this Court's review, see MCR 7.210(A)(1), and there is simply no record support for defendant's claim that police specifically averred that they expected to find GHB (as opposed to date rape drugs generally or the specific drugs found in KW's urine). There is also no indication in the record regarding what other information the affidavit contained. See *Ulman*, 244 Mich App at 510. In short, without the search warrant and affidavit, it is impossible to evaluate defendant's assertions regarding GHB and to otherwise evaluate whether the affidavit established probable cause. Additionally, even assuming some deficiency in the affidavit that would invalidate the search warrant and merit application of the exclusionary rule, defendant cannot demonstrate that any error was outcome-determinative. In his brief, defendant does not address what evidence should have been suppressed on the basis of the purportedly invalid search warrant. Indeed, the police testified that they did *not* find date rape drugs during the search. On the whole, defendant cannot show outcome-determinative error relating to the search warrant when he had not identified any

---

[8] Moreover, assuming the texts constitute other-acts evidence for which notice was required under MRE 404(b)(2), defendant would not entitled to reversal because defendant has not shown that failure to provide notice of the text messages had any effect on the proceedings. See *People v Hawkins*, 245 Mich App 439, 455; 628 NW2d 105 (2001).

evidence obtained from an invalid search or explained how the admission of this evidence affected the outcome of the proceedings.

## B. INEFFECTIVE ASSISTANCE

Next, defendant argues that defense counsel provided ineffective assistance by failing to present evidence, impeach witnesses, and call an expert toxicologist or a private investigator. Defendant also asserts that defense counsel provided ineffective assistance by advising defendant to openly discuss his prior criminal history during his trial testimony.

"Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *Carbin*, 463 Mich at 600. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

As an initial matter, the majority of defendant's ineffective assistance arguments fail because he has not established the factual predicate for his claims. For instance, defendant claims (1) that a video from a bar would have contradicted KW's and SL's testimony, (2) that SS's drug tests were negative, (3) that there was video showing SS engaging in voluntary sexual activity, (4) that KW's medical records showed or could have shown that she had prescriptions for the drugs found in her urine, and (5) that a toxicologist or a private investigator could have aided the defense. None of these assertions have any basis in the lower court record.[9] Absent any indication that the evidence and testimony in question exists and could have aided the defense, defendant has not overcome the presumption that counsel's decisions regarding what evidence to present, what witnesses to call, and how to question witnesses were a matter of sound trial strategy. See *id*. at 248-249. He has not shown a reasonable probability that counsel's purported failures affected the outcome of the proceedings. See *People v Ackerman*, 257 Mich App 434, 455; 669 NW2d 818 (2003). Accordingly, his ineffective assistance claims on these bases are without merit. See *Jackson*, 292 Mich App at 600-601.

Defendant's remaining claim involves the assertion that defense counsel provided ineffective assistance by advising defendant to testify openly about his criminal history. Unlike defendant's other claims, there is factual support for defendant's assertion that defense counsel advised him to discuss his criminal history at trial. During trial, defense counsel indicated defendant would likely testify, and defense counsel spoke with defendant to make sure that defendant understood "the ramifications that can come with that." The details underlying defendant's decision to testify and the potential ramifications were placed on the record during the colloquy on defendant's decision to testify, including the fact that the defense intended to

---

[9] We note that defendant filed a motion to remand for an evidentiary hearing, which we previously denied. In connection with his motion to remand, defendant failed to make an offer of proof that would warrant an evidentiary hearing to develop a record relating to these matters. See MCR 7.211(C)(1). We also see no reason for a remand at this time.

delve into defendant's prior CSC conviction relating to E. Although the record shows that defense counsel advised defendant to discuss his criminal history at trial, defendant has not overcome the presumption that counsel's decision was a matter of trial strategy, and, even assuming counsel's performance was deficient, defendant cannot show a reasonable probability of a different outcome. Accordingly, defendant's claim fails.

First, the colloquy at trial indicates that defense counsel—with defendant's approval—made a strategic decision to delve into defendant's criminal history. Such a decision does not appear unreasonable when the facts relating to E were already before the jury as a result of evidence introduced in the prosecutor's case-in-chief and when the additional information defendant offered in his testimony in terms of his plea, sentence, and time served, enabled defense counsel to craft an argument regarding defendant's susceptibility to being Humphrey's unwitting wingman. In other words, defense counsel elicited this testimony in order to argue that defendant stopped "maturing at age 14" when he was "taken away from his family" and placed in the company of "prisoners and felons." Given defendant's background, defense counsel argued that Humphrey chose defendant to be his wingman "for a reason just like the victims here." On this record, defense counsel's decision was a matter of trial strategy, and defendant cannot establish the ineffective assistance of counsel. See *Putman*, 309 Mich App at 248.

Second, even assuming defense counsel's performance was deficient, defendant cannot show a reasonable probability of a different outcome. See *Jackson*, 292 Mich App at 600-601. Again, evidence relating to E was already before the jury. Further, the evidence of defendant's guilt was considerable and overwhelmingly demonstrated that, while aided and abetted by Humphrey, defendant sexually assaulted KW and SL when he knew or had reason to know that they were mentally incapacitated or physically helpless. See MCL 750.520b(1)(d)(*i*). Accordingly, on the record presented, defendant has not shown that counsel's purported deficiencies affected the outcome of the proceedings, and his ineffective assistance claim is without merit. See *Jackson*, 292 Mich App at 600-601.

## C. MRE 803(5)

Finally, defendant argues that the trial court abused its discretion by allowing Burnham to read her report regarding E into the record. Alternatively, defendant argues that defense counsel provided ineffective assistance by failing to object to the admission of this evidence.

Burnham, a former police officer, interviewed defendant with regard to his sexual assault of E. The trial court allowed Burnham to read her police report regarding her interview with defendant under MRE 803(5). Under MRE 803(5), the following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Under this rule, hearsay documents may be read as recorded recollections if they meet three requirements:

> (1) The document must pertain to matters about which the declarant once had knowledge; (2) [t]he declarant must now have an insufficient recollection as to such matters; [and] (3) [t]he document must be shown to have been made by the declarant or, if made by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his memory. [*People v Dinardo*, 290 Mich App 280, 293; 801 NW2d 73 (2010) (quotation marks and citation omitted).]

Burnham's police report meets these criteria because (1) she once had knowledge of her conversation with defendant relating to her investigation into the assault on E, (2) at the time of trial she no longer recalled the conversation, and (3) she personally made the police report. We note that Burnham's report contains statements made by defendant to Burnham about the sexual assault and the events relating to the sexual assault itself would be outside Burnham's personal knowledge. However, this does not alter the MRE 803(5) analysis because Burnham recorded her recollection *of the interview*, and defendant's statements to Burnham during the interview constitute an admission of a party-opponent, which is not hearsay under MRE 801(d)(2)(A). Cf. *United States v Green*, 258 F3d 683, 689-690 (CA 7, 2001) (relying on FRE 803(5) and FRE 801(d)(2)(A) to conclude that a police summary of an interview containing statements by the defendant could be introduced as a police officer's recorded recollection of the interview); see also MRE 805 (recognizing that a statement within hearsay is not excluded "if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules"). Accordingly, MRE 803(5) applies, and the trial court did not abuse its discretion by allowing Burnham to read her report. Additionally, because the report was properly admitted under MRE 803(5), any objection by defense counsel to the reading of Burnham's report would have been futile. Defense counsel was not ineffective for failing to make a futile objection.[10] See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

---

[10] On appeal, in challenging the reading of Burnham's statements, defendant also offers the cursory assertions that Burnham's report should not have been read because (1) the events relating to E shared no similarities with the facts of the current case and (2) Burnham was not listed on the prosecutor's witness list. These cursory assertions, made without any citation to supporting law, are abandoned. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). In any event, to the extent defendant's reference to "similarities" is intended as an argument under MRE 404(b), defendant is not entitled to relief for the reasons discussed in Issue I. Regarding the prosecutor's witness lists, even though Burnham was not identified on the prosecutor's witness list, defendant is not entitled to relief because he has not shown prejudice. See *People v Everett*, 318 Mich App 511, 523; 899 NW2d 94 (2017). Defendant clearly had notice of Burnham as a potential witnesses and, more specifically, as a potential other-acts witness because she was listed (1) on the prosecutor's notice of intent regarding MRE 404(b) witnesses and (2) on defendant's witness list. Further, defendant did not object to her testifying at trial, nor did he request a continuance to prepare for, or respond to, her testimony. Cf. *People*

Affirmed.

/s/ James Robert Redford
/s/ Kathleen Jansen
/s/ Anica Letica

---

*v Herndon*, 246 Mich App 371, 403; 633 NW2d 376 (2001); *People v Cyr*, 113 Mich App 213, 224; 317 NW2d 857 (1982). These facts do not support a finding of prejudice, and accordingly, defendant is not entitled to relief on appeal. See *Everett*, 318 Mich App at 523, 526.