*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 28, 2021

v

No. 349691
Emmet Circuit Court
LC No. 19-004875-FH

CASEY STEPHEN TURNER,

        Defendant-Appellant.

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

Defendant was convicted by a jury of aggravated stalking, MCL 750.411i, and using a computer to commit a crime, MCL 752.796(1) and MCL 797(3)(d).[1] He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 46 months to 15 years in prison for each conviction. Defendant now appeals as of right and we affirm.

## I. FACTUAL BACKGROUND

Defendant rented an apartment and he and his girlfriend, the victim, were living there together when he was convicted of certain felonies and was sentenced to jail. Shortly before he was to be released from jail, his girlfriend told him that she was breaking up with him. She arranged for him to be moved out of the apartment. Defendant sought to convince her to reconcile. This led to him calling her and sending her numerous text messages, some of which included links to Netflix, YouTube, and other internet connections, which he was prohibited from accessing while on probation; defendant also accessed her Facebook account. She repeatedly asked defendant to stop contacting her but defendant claimed that while she did so, she also continued to contact him. She explained that her contacts involved outstanding issues such as having him pick up his remaining possessions and letting him know he had mail. On one occasion, after coming to the

---

[1] Defendant was acquitted of second-degree home invasion, MCL 750.110a(3), and larceny in a building, MCL 750.360.

-1-

apartment to pick up a letter, defendant contacted the victim, accused her of cheating on him, and claimed to have found her sex toys. This caused her to believe that defendant had entered the apartment, which concerned her because defendant had surrendered his key and she had subsequently had the locks changed. However, he claimed that he had a key. The victim contacted the police. She also confirmed that her sex toys had been taken from a dresser drawer and removed from the apartment.

## II. INEFFECTIVE ASSISTANCE

Defendant first claims that his trial counsel failed to provide effective assistance of counsel. We disagree.

" 'Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law.' *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). 'A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel.' *Id*. This Court reviews for clear error the trial court's factual findings and reviews de novo questions of law. *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014)." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017).

> "To establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted the defendant." Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases. There is accordingly a strong presumption of effective assistance of counsel. We will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence. [*People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008) (citations omitted).]

Defendant first asserts that his trial counsel did not accurately assess the legal meaning of the aggravated stalking statute and therefore presented a "novel" but "foolish" trial strategy, arguing that defendant's continued contacts with the victim could only violate the aggravated stalking statute if defendant's probation order contained a provision specifically forbidding him from contacting her. The aggravated stalking statute, MCL 750.411i(2)(b) provides, in relevant part:

(1) As used in this section:

(a) "Course of conduct" means a pattern of conduct composed of a series of 2 or more separate noncontinuous acts evidencing a continuity of purpose.

* * *

(c) "Emotional distress" means significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling.

(d) "Harassment" means conduct directed toward a victim that includes, but is not limited to, repeated or continuous unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose.

(e) "Stalking" means a willful course of conduct involving repeated or continuous harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(f) "Unconsented contact" means any contact with another individual that is initiated or continued without that individual's consent or in disregard of that individual's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

* * *

(*iii*) Appearing at that individual's workplace or residence.

(*iv*) Entering onto or remaining on property owned, leased, or occupied by that individual.

(*v*) Contacting that individual by telephone.

(*vi*) Sending mail or electronic communications to that individual.

(*vii*) Placing an object on, or delivering an object to, property owned, leased, or occupied by that individual.

(g) "Victim" means an individual who is the target of a willful course of conduct involving repeated or continuous harassment.

(2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:

* * *

(b) At least 1 of the actions constituting the offense is in violation of a condition of probation, a condition of parole, a condition of pretrial release, or a condition of release on bond pending appeal.

* * *

(5) In a prosecution for a violation of this section, evidence that the defendant continued to engage in a course of conduct involving repeated unconsented contact with the victim after having been requested by the victim to discontinue the same or a different form of unconsented contact, and to refrain from any further unconsented contact with the victim, gives rise to a rebuttable presumption that the continuation of the course of conduct caused the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

"Aggravated stalking consists of the crime of 'stalking,' MCL 750.411h(1)(d), and the presence of an aggravating circumstance specified in MCL 750.411i(2)." *People v Threatt*, 254 Mich App 504, 505; 657 NW2d 819 (2002). As indicated in both MCL 750.411h and MCL 750.411i, "stalking" is defined as "a willful course of conduct involving repeated or continuous harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." The evidence showed that defendant repeatedly contacted the victim using his cell phone despite her repeated requests and demands that he stop contacting her, and that he also sent electronic communications to her. The victim testified that she was so disturbed by defendant's continuous contacts that she lost weight, had trouble eating, and broke out in hives. Defendant admitted that he continued to contact the victim despite her requests that he stop. The evidence also showed that defendant "delivered an object to[] property . . . occupied" by the victim, a can of mace that the victim had not requested or known that defendant was going to leave for her. Thus, the evidence established that defendant engaged in the "unconsented contact" forbidden by the stalking statute and that he had violated the misdemeanor stalking statute, MCL 750.411h(2)(a); trial counsel was faced with trying to keep defendant from being convicted of the more serious felony offense of aggravated stalking.

To establish that defendant was guilty of *aggravated* stalking, the prosecution had to show that defendant was "in violation of a condition of probation." MCL 750.411i(2)(b). Defendant's probation officer testified that when defendant was released from jail, he was subject to a standard order of probation that provided, in part, that he was not to "violate any criminal law of any unit of government," or "engage in any assaultive, abusive, threatening or intimidating behavior," or "own or possess any computer or device capable of connecting to the internet . . . unless he obtained permission from his probation agent." Defendant was allowed to possess his cell phone, provided that it was not enabled to connect to the internet, and the probation agent had taken defendant's cell phone to a cell service provider and had the internet capability disabled.

Trial counsel decided that the way to challenge this offense was to argue to the jury that the victim initiated some of the telephone contacts and had encouraged some of the contact, while benefiting from living in the apartment leased by defendant. Trial counsel also chose to argue to the jury that the "blanket" no-contact provision of the probation order did not apply because defendant "had a relationship with her" and she was not specifically "mentioned in the order of probation." As he explained at a postconviction *Ginther* hearing,[2] trial counsel believed that he

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

could convince the jury that the prosecution's use of the "blanket" no-contact provision of the probation order to argue that defendant was specifically forbidden from having contact with the woman who was his former girlfriend, and who was living in an apartment that he leased, would strike the jury as "double-dipping." When pressed on this point, trial counsel testified that this "was an argument for the jury" and that he did not intend to make a legal argument on this basis to the trial court because "it was too close a call, and I certainly didn't want to go into trial with that issue decided. I was much better off . . . arguing it to the jury as opposed to trying to defeat the law head on." Trial counsel observed that there was unpublished supporting caselaw, but he recognized that it was not binding authority, and also that if he argued the issue to the trial court and lost, he would not be able to use it to try to persuade the jury.

Defendant argues that this was a pointless strategy because in *People v White*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2008 (Docket No. 274304), p 3, this Court held that a specific condition of probation prohibiting the defendant from approaching or contacting the complainants was not necessary when the order contained a broad condition that prohibited defendant from violating any criminal law. However, this case does not demonstrate that trial counsel's strategy was unreasonable. First, it was unpublished and thus, it was not precedentially binding. MCR 7.215(C)(1); *People v Golba*, 273 Mich App 603, 613; 729 NW2d 916 (2007). Second, trial counsel's decision appears to be a valid decision based on a reasonable trial strategy: he could present the legal issue to the trial court, likely lose, and thus be forbidden from making that argument to the jury, or he could instead make the argument directly to the jurors in the hope that they would find it persuasive. As the prosecutor points out, there are several unpublished decisions of this Court holding that where a trial counsel lacks a viable defense, it is not unreasonable to attempt to pursue a defense of jury nullification.[3] Finally, presentation of the evidence that the victim initiated some of the telephone calls and that she continued to live in an apartment leased by defendant, combined with defendant's testimony that he still loved her and simply wanted to convince her to reconcile with him, was a reasonable trial strategy. Using this same evidence, trial counsel was able to convince the jury to acquit defendant of the second-degree home invasion and the larceny in a building charges, presumably on the basis that defendant could not invade an apartment of which he was the lessee and that there was insufficient evidence that he entered the apartment or stole the items. Defendant has failed to demonstrate that trial counsel's trial strategy was unreasonable.

Defendant next argues that even if this trial strategy was not ineffective, counsel's reliance on this strategy caused him to convince defendant to reject a plea offer that would ultimately have resulted in defendant receiving a far shorter sentence because it would have avoided the habitual offender sentencing. At the *Ginther* hearing, trial counsel explained that the prosecution had

---

[3] "Jury nullification is the power to dispense mercy by nullifying the law and returning a verdict less than that required by the evidence." *People v Demers*, 195 Mich App 205, 206; 489 NW2d 173 (1992), cited in *People v Mixon*, unpublished per curiam opinion of the Court of Appeals, issued March 17, 2009 (Docket No. 281417), p 2; see also *People v Kopp*, unpublished per curiam opinion of the Court of Appeals, issued October 17, 2006 (Docket No. 261508), p 3, and *People v Salem*, unpublished per curiam opinion of the Court of Appeals, issued September 7, 2001 (Docket No. 205746), pp 8-9.

proposed that defendant could plead guilty to one count of aggravated stalking and one count of using a computer to commit a felony with no habitual offender supplementation, and that counsel presented that offer to defendant, along with an estimate of the sentencing guidelines. Trial counsel denied that defendant was willing to accept this offer, maintaining that defendant "was pretty adamant about having this thing have a misdemeanor resolution, and he would have pled guilty to any number of misdemeanors in exchange for dismissal of the principal charges," but he would have only been willing to plead to misdemeanor charges. Defendant anticipated that the trial court would have sentenced him on the proffered felony offenses at the high end of the guidelines; he also had another outstanding case, so he was worried what impact a felony plea in this case would have on his other case. Trial counsel identified a counteroffer that he had presented to the prosecutor on defendant's behalf by which defendant would have pleaded to two misdemeanor offenses. The prosecutor had rejected the counteroffer. Trial counsel testified that he advised defendant that the prosecutor's home invasion charge "was a loser" and that defendant had "a good chance on the Aggravated Stalking," but that he did not believe he would have told defendant to "take" any of the plea offers made by the prosecution because "I don't know if I've ever told a client to take an offer. I've only ever . . . presented the alternatives." Defendant testified that, in retrospect, if he had realized that there was a "reasonable possibility" that he would have been convicted of aggravated stalking, he "would have been extremely inclined to take the plea agreement." And defendant admitted that he did not believe he was guilty of aggravated stalking before he went to trial, which would have made him disinclined to plead guilty.

Defendant has failed to demonstrate that trial counsel gave him improper legal advice about the aggravated stalking charge or that he would have accepted the prosecutor's plea offer if he had realized trial counsel's trial strategy would likely not work. As the trial court found, defendant was adamant that he would not plead to a felony charge. On appeal, defendant does not acknowledge that he had another outstanding felony case and that he was concerned about the effect pleading to a felony in this case would have on his other case. These were strategic decisions by both trial counsel and defendant, and this Court will not second-guess these decisions with the benefit of hindsight. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

Defendant finally argues that trial counsel was ineffective for failing to object to the prosecutor's presentation of prior bad acts evidence. This evidence consisted of the fact that defendant was in jail and then on probation during the relevant events. Defendant claimed this evidence prejudiced him by "paint[ing] [defendant] as a hopelessly bad criminal." However, the jury convicted defendant of two offenses while acquitting him of two other offenses. Based on the testimony of the victim and the police, the jury could have convicted defendant of breaking into the victim's apartment and stealing her property. That the jury believed defendant's denial indicated that the jurors took their job seriously and did not merely find defendant guilty because he had been on probation and in jail. Furthermore, trial counsel explained why he did not object to this evidence— it was inevitably going to come out because the aggravated stalking charge was premised on the fact that defendant violated a term of his probation. Trial counsel wanted to be forthright with the jurors and not appear to be trying to hide or downplay defendant's situation. At the same time, trial counsel was able to keep from the jury the facts of the conviction offenses that had caused defendant to be in jail: he had been caught accessing and viewing photographs of naked women's breasts from the hospitals records of breast surgeries. And he was also convicted of using a computer to access internet photographs of small children performing sexual acts. This

involved walking a tightrope; in fact, at one point the trial court pointed out at a bench conference during trial counsel's examination of the victim:

> This witness has been extremely good in not disclosing her reasons for breaking off the relationship, which I suspect were that she knew that he had been looking at naked women's breasts at the hospital, and then when he was on probation, she found out he was accessing porn on his computer, and if you open the door to that, and if that's what's going on here, your questioning would be troublesome.

Defendant fails to explain what trial counsel should have done instead of admitting that defendant had been in jail and was on probation when he committed the charged offenses, while also limiting the amount of evidence regarding defendant's prior record. Contrary to defendant's argument on appeal, it appears that trial counsel's strategy was to attempt to structure the trial so that the very minimum regarding defendant's prior criminal offenses was presented to the jury. This was a valid and reasonable trial strategy. This Court does not second-guess such strategic decisions with the benefit of hindsight, *Russell*, 297 Mich App at 716.

## III. SUFFICIENCY OF THE EVIDENCE AND INEFFECTIVE ASSISTANCE

Defendant next argues that if trial counsel's "excessively narrow interpretation" of the aggravated stalking statute was correct, then the evidence that was presented at trial was insufficient to support his conviction. Defendant also claims that trial counsel was ineffective for failing to preserve this issue by moving before trial for a ruling on this legal theory. We find no merit in these arguments.

"To determine whether there was sufficient evidence to support a conviction, this Court reviews the evidence de novo, in the light most favorable to the prosecutor, to determine whether a rational trier of fact could have found that the essential elements of the offense were proved beyond a reasonable doubt." *People v Head*, 323 Mich App 526, 531; 917 NW2d 752 (2018). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). "Review is limited to whether failure to review would deprive the defendant of a fair trial or result in manifest injustice." *People v Osby*, 291 Mich App 412, 415; 804 NW2d 903 (2011). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619.

Essentially, defendant appears to argue that if trial counsel believed in his trial strategy, he should have presented it as a legal argument to the trial court in a pretrial motion. If he had prevailed, he would have been able defeat the aggravated stalking charge before the trial commenced. If counsel lost the motion, defendant suggests, defendant would have concluded that it was best to accept the prosecutor's plea offer. Defendant then claims that trial counsel's failure to present this legal issue to the trial court was ineffective assistance because it resulted in the issue being "unpreserved," prejudicing defendant.

Though presented as an insufficiency of the evidence argument, defendant's argument is actually more of a statutory interpretation issue combined with an ineffective assistance of counsel claim. This Court interprets statutory language "by examining the plain language of the statute; where that language is unambiguous, [the Court] presume[s] that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

Again, MCL 750.411i(2)(b) provides:

> (2) An individual who engages in stalking is guilty of aggravated stalking if the violation involves any of the following circumstances:
>
> * * *
>
> (b) At least 1 of the actions constituting the offense is in violation *of a condition of probation*, a condition of parole, a condition of pretrial release, or a condition of release on bond pending appeal. [Emphasis added.]

The testimony at trial established that defendant's order of probation provided that he was not to "violate any criminal law of any unit of government," or "engage in any assaultive, abusive, threatening or intimidating behavior," or "own or possess any computer or device capable of connecting to the internet . . . unless he obtained permission from his probation agent." Defendant violated a condition of probation by his repeated unconsented contacts with the victim, which constituted "abusive, threatening, or intimidating behavior." Also, he owned a "computer or device capable of connecting to the internet" because he owned and used a cell phone with which he apparently connected to the internet.[4] Additionally, defendant's refusal to stop his repeated contacts, his apparent entry into the apartment after the locks were changed, and his contacts during which he accused her of cheating on him and called her a whore, were additional evidence that defendant had engaged in "abusive, threatening or intimidating behavior."[5]

As noted above, trial counsel testified at the *Ginther* hearing concerning his reasoning for *not* presenting this legal argument to the trial court: if he lost, he would be precluded from using it with the jury. Trial counsel's hope was that, whatever the legal viability of the argument, he could get the jury to accept it and acquit defendant. As long as he did not ask the trial court to determine the legal issue, nothing in the existing rulings would preclude trial counsel from arguing to the jury that the prosecutor had failed to present evidence of aggravated stalking pursuant to a

---

[4] Although his probation agent had taken steps to disable the phone's access to the internet, some of defendant's text messages to the victim contained links to Spotify, Netflix, YouTube, and other internet-related links, all of which required internet access. The victim also testified that defendant continued to access her Facebook social media account, which required internet access.

[5] While the jury may have decided not to convict defendant of second-degree home invasion— presumably because he was still the technical lessee of the apartment—that did not mean that the victim was not threatened or intimidated by his apparent entry after she had the locks changed.

reasonable interpretation of the statutory terms. This was a strategy that at least offered some hope of success, and it was chosen in light of the fact that defendant adamantly refused to plead guilty to a felony offense.

Defendant has failed to demonstrate that his conduct did not violate the clear terms of the aggravated stalking statute and, therefore, there was sufficient evidence to support his conviction. Moreover, defendant has failed to demonstrate that a legal challenge based on the novel interpretation of the aggravated stalking statute would have succeeded. Trial counsel therefore could not have been ineffective for failing to make a pretrial motion on this basis. And it was a reasonable and valid trial strategy to avoid a legal ruling on this interpretation and instead use it to try to convince the jury that defendant had not committed aggravated stalking. This Court will not second-guess such strategic decisions. *Russell*, 297 Mich App at 716.

## IV. SENTENCING

Defendant finally claims that his sentence was unreasonable. Defendant is barred from raising this claim because his "minimum sentence is within the appropriate guidelines range." MCL 769.34(10). Defendant admits that, although it has been challenged, this statutory provision has not been invalidated by this Court or by our Supreme Court. Defendant has failed to present any cogent argument for invalidating this provision aside from stating: "[Defendant] would continue to contend that this provision violates the principle articulated in [*People v*] *Lockridge* [498 Mich 358; 870 NW2d 502 (2015)] that holds unconstitutional a mandatory sentencing guidelines scheme with factors determined by a mere preponderance of the evidence and judicial factfinding." Such cursory treatment of a claim constitutes abandonment of the issue on appeal. *People v Smart*, 304 Mich App 244, 251; 850 NW2d 579 (2014). Moreover, this Court has recognized that our Supreme Court has refused to invalidate MCL 769.34(10) and has routinely affirmed sentences that are within the recommended minimum sentencing guidelines range. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016); *People v Anderson*, 322 Mich App 622, 636; 912 NW2d 607 (2018).

Defendant also argues that a minimum sentence within the guidelines may be challenged if the sentencing court relied on incorrect factual information when imposing the sentence. Defendant cites no authority for this claim. Moreover, defendant's challenge again falls afoul of MCL 769.34(10), which plainly forbids a challenge to "the accuracy of the information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." Defendant did none of these things. Therefore, his challenge is not properly before this Court.

In any event, defendant's claims do not merit relief. Regarding the harshness the sentence, it was within the minimum term recommended by the sentencing guidelines, and defendant has not challenged the scoring of the guidelines. Accordingly, defendant's sentence was, by definition, presumably proportionate to the seriousness of the crime, and absent unusual circumstances, none of which have been shown here, we must affirm. MCL 769.34(10); *People v Babcock*, 469 Mich 247, 261; 666 NW2d 231 (2003); see also, *People v Steanhouse*, 500 Mich 453, 473; 902 NW2d

327 (2017). Defendant also argues that the trial court inaccurately claimed that he engaged in acts of domestic violence toward the victim. The trial court stated:

> For the new conviction, Defendant has shown by his conduct in [this] case that unfortunately as noted he is a risk to others. He has issues of domestic violence that showed themselves sadly by his behavior in [this] case toward the victim. She suffered serious and profound harm as a result.

Contrary to defendant's interpretation, the court was not making a finding that defendant had committed an act of criminal domestic violence against the victim, but simply concluded, based on defendant's behavior, that he had "issues of domestic violence" and that these issues were displayed in how he interacted with the victim; specifically, defendant continued contact despite her repeated pleas that he stop, accused her of cheating with no foundation, and called her a whore.

Affirmed.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering